IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| | 1:11-CR-239-CAP-ECS |
| *v.* | |
| | Civil Action No. |
| ADRIAN MARTINEZ MONTANEZ | 1: 14-CV-1456-CAP-ECS |

## RESPONSE TO 28 U.S.C. § 2255 MOTION
## TO VACATE, SET ASIDE OR CORRECT SENTENCE

COMES NOW the United States of America, by Sally Quillian Yates, United States Attorney, and Lisa W. Tarvin, Assistant United States Attorney for the Northern District of Georgia, and hereby files this Response to Adrian Martinez Montanez's 28 U.S.C. § 2255 Motion to Vacate, Set Aside or Correct Sentence.

## INTRODUCTION

In his present motion, Montanez raises four claims, asserting that: (1) his counsel was ineffective for refusing to file a notice of appeal, despite Montanez's request to do so; (2) his guilty plea was involuntary based on ineffective assistance because his counsel made certain promises to Montanez as part of the plea that were not fulfilled; (3) his guilty plea was involuntary based on government coercion because the government allegedly threatened to prosecute Montanez's girlfriend if he did not plead guilty; and (4) his counsel was ineffective at sentencing for failing to challenge the drug quantity and seek a safety-valve reduction.

Montanez's claim that his counsel was ineffective for refusing to file a notice of appeal requires a limited evidentiary hearing. However, Montanez's claims that his guilty plea was involuntary based on ineffective assistance and alleged government coercion are affirmatively contradicted by the record, and thus are without merit. Montanez's claim of ineffective assistance at sentencing is waived based on his valid and enforceable appeal waiver.

## PROCEDURAL HISTORY

On June 14, 2011, a federal grand jury sitting in the Northern District of Georgia returned a nineteen-count superseding indictment, charging Montanez and seventeen co-defendants with drug trafficking, money laundering and firearms offenses. (Doc. 149). Specifically, Montanez was charged in Counts One (drug conspiracy), Three (money laundering conspiracy), Eight (substantive drug offense), Ten (substantive drug offense), Thirteen (substantive drug offense), Fourteen (substantive drug offense), and Seventeen (substantive money laundering offense). (*Id.*). On February 13, 2013, Montanez pled guilty to Counts One and Three. (Docs. 739-1, 872). The Court sentenced Montanez on April 25, 2013, to 168 months of imprisonment on each of Counts One and Three, to run concurrently. (Doc. 776). Montanez did not file a direct appeal. He is currently incarcerated with a projected release date of October 4, 2023. *See Bureau of Prisons*, http://www.bop.gov (last visited June 25, 2014).

On May 8, 2014, Montanez timely filed the 28 U.S.C. § 2255 motion presently before the Court,[1] to which the government responds herein pursuant to the Court's Order. (Docs. 855, 871).

## STATEMENT OF FACTS

### A. Guilty Plea

Montanez tendered a negotiated plea of guilty to Counts One and Three of the superseding indictment on February 13, 2013. (Docs. 739-1, 872). Montanez's plea agreement set forth the parties' agreement regarding forfeiture of assets and property, which included the forfeiture of the 2011 Kia Sorento, titled in the name of Yaneth Viviana Villada. (Doc. 739-1 at 11-15; Doc. 797). Montanez's plea agreement also set forth certain sentencing recommendations the parties had agreed upon, including that: (1) Montanez be held responsible for 150 kilograms of cocaine, corresponding to base offense level 38; (2) a role enhancement of at least three levels, pursuant to § 3B1.1(b) was warranted, and the government may argue for four levels; (3) the government would recommend that Montanez receive the

---

[1] Montanez's motion was actually filed with the Court on May 12, 2014; however, pursuant to the mailbox rule, the motion is deemed filed on May 8, 2014, the date Montanez certified delivery of the motion, first class postage prepaid, to prison authorities for mailing. (Doc. 855 at 13); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001); Fed. R. App. P. 4(c); 28 U.S.C. § 1746. The motion is timely because it was filed within one year of May 9, 2013 — the date Montanez's conviction became final. *See Akins v. United States,* 204 F.3d 1086 (11th Cir. 2000)("A conviction ordinarily becomes final when the opportunity for direct appeal of the judgment of conviction has been exhausted"). Here, the judgment was entered on April 25, 2013, (doc. 776), and the 14-day period wherein Montanez could have filed a direct appeal expired on May 9, 2013. *See* Fed. R. App. P. 4(b)(1)(A)(i).

§ 3E1.1 acceptance of responsibility reduction, provided that Montanez did not subsequently engage in conduct inconsistent with accepting responsibility; (4) a two-level upward adjustment pursuant to § 2S1.1(b)(2)(B) was applicable, but the government would recommend a corresponding two-level downward variance; (5) because Montanez expeditiously entered his plea of guilty, thereby conserving resources, the parties would jointly recommend that Montanez receive an additional one-level downward variance; and, (6) the government would recommend that Montanez be sentenced to the low end of the adjusted Guidelines range calculated by the Court. (Doc. 739-1 at 6-7, 9, 16). The government further agreed to file a § 5K1.1 motion at Montanez's sentencing, recommending a three-level downward departure based on substantial assistance provided by Montanez; and if Montanez continued to cooperate after sentencing, and the government determined that such cooperation qualified as substantial assistance, the government would later file a Rule 35 motion. (Doc. 739-1 at 15-17).

Montanez's plea agreement included the following paragraph addressing the waiver of his right to appeal:

> LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or a variance from the sentencing guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross appeal of that same sentence.

(Doc. 739-1 at 18-19). The plea agreement also included the following paragraph verifying by his signature that Montanez had read the plea agreement, reviewed the agreement with his attorney, and fully understood and voluntarily agreed to its terms and conditions, including the waiver of appeal:

> I have read the [Indictment] against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

(Doc. 739-1 at 21).

During Montanez's colloquy with the Court, the Court established that Montanez understood the constitutional rights he was waiving by pleading guilty, including his right to a trial where the government would be required to prove his guilt beyond a reasonable doubt. (Doc. 872 at 6-8). Further, the Court established that Montanez understood the charges to which he was pleading guilty, and also understood the consequences of his guilty plea, including that he faced a mandatory minimum sentence of 120 months and a maximum penalty of life. (*Id.*

at 5, 18, 20). The Court established that Montanez understood that his negotiated plea agreement contained a waiver of his right to appeal or collaterally attack his conviction or sentence, and Montanez knowingly and voluntarily waived his right to appeal:

> Court: Also, you would have the right to appeal your sentence, but for this plea agreement you are waiving certain appeal rights, which means that you'll be bound by the Court's decision. Do you understand that?
>
> Montanez: Yes, sir.
>
> Court: There are some exceptions, but generally you are going to be bound by the Court's decision. Also, you are waiving your right to collaterally attack your sentence in any post conviction proceeding such as a habeas corpus. Do you understand that?
>
> Montanez: Yes, sir.

(*Id.* at 21-22). The Court further established that Montanez understood that he would likely be deported at the end of his sentence.

> Court: In your case I suspect that you'll be deported from this country at the end of your sentence, and that this conviction and your deportation will act as a bar to you ever reentering this country legally. Do you understand that?
>
> Montanez: Yes, sir.

(*Id.* at 22). At the Court's direction, the government set forth the factual basis for the plea, and Montanez agreed that the government's description of the offense conduct was accurate. (*Id.* at 16-18). Montanez stated under oath to the Court that

he had discussed his guilty plea fully with his attorney, and he was satisfied with his attorney's representation. (*Id.* at 5-6, 23). Montanez further stated under oath to the Court that he had not been threatened or coerced in any way into pleading guilty, nor been promised anything that was not contained in the written plea agreement. (*Id.* at 6, 14-15).

Given this record, the Court found that there was a sufficient factual basis for the plea, and the Court accepted the plea. (*Id.* at 20, 24).

**B. Sentencing**

Utilizing the 2012 Guidelines Manual, the Pre-Sentence Report ("PSR") recommended that Montanez's initial base offense level be set at 38. (PSR, ¶¶ 29-30). Specifically, pursuant to §§ 3D1.2 and 3D1.3, the counts were grouped, and the highest offense level guideline — § 2S1.1 (money laundering) — was used. (PSR, ¶ 29). Under § 2S1.1(a)(1), which calls for a base offense level for the underlying drug offense from which the laundered funds were derived, the base offense level was 38, based on 288 kilograms of cocaine. (PSR, ¶¶ 29-30). With a two-level enhancement pursuant to § 2S1.1(b)(2)(B) for conviction under 18 U.S.C. § 1956, a four-level enhancement pursuant to § 3B1.1(a) for aggravating role, and a three-level reduction pursuant to § 3E1.1(a) and (b) for acceptance of responsibility, Montanez's total offense level was 41. (PSR, ¶¶ 31, 33, 36-37). Applying criminal history category I, the resulting Guidelines custody range was 324 – 405 months of imprisonment. (PSR, Part D). The statutory mandatory minimum penalty was ten years. (*Id.*). Montanez objected to the four-level aggravating role enhancement. (PSR, ¶ 33).

At the sentencing hearing, the Court overruled Montanez's objection to the aggravating role enhancement, and assessed four levels. (Doc. 873 at 3-12). As agreed upon as part of Montanez's negotiated plea agreement, the government recommended two downward variances: (1) a two-level variance to offset the two-level § 2S1.1(b)(2)(B) money laundering enhancement; and (2) a one-level variance for pleading guilty early in the case. (*Id.* at 12-14). The Court granted both variances, and thus found that Montanez's adjusted total offense level was 38, resulting in a Guidelines custody range of 235 – 293 months of imprisonment. (*Id.* at 14). The government then presented its § 5K1.1 motion, seeking a three-level downward departure for Montanez based on the substantial assistance he had provided to the government as of the date of the sentencing hearing. (*Id.* at 14-15). The government noted for the Court that Montanez had promised to continue to cooperate; and therefore, he could still be eligible for an additional Rule 35 substantial assistance sentence reduction at some time in the future. (*Id.* at 15).

Based on the level 38 found by the Court, the requested three-level departure placed Montanez at a level 35, resulting in a Guidelines range of 168 – 210 months, and as agreed upon as part of the plea agreement, the government recommended a low-end sentence of 168 months (14 years) of imprisonment. (*Id.* at 15). Defense counsel argued that Montanez should receive a greater departure of six or seven levels for the assistance he had provided, and counsel recommended a sentence of 120 months (10 years) or less. (*Id.* at 19-25). The Court sentenced Montanez to 168 months of imprisonment. (*Id.* at 26-27).

# ARGUMENT AND AUTHORITY

1. **MONTANEZ'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL REQUIRES A LIMITED EVIDENTIARY HEARING.**

Montanez claims that he told his counsel he wished to appeal his sentence, but counsel told him that the waiver contained in the plea agreement precluded appeal. (Doc. 855 at 7). Notwithstanding the waiver of appeal and collateral attack, this claim is properly before the Court. (Doc. 855 at 7); *see Gomez-Diaz v. United States*, 433 F.3d 788, 791 792 (11th Cir. 2005)(applying *Roe v. Flores Ortega*, 528 U.S. 470, 120 S. Ct. 1029 (2000) to cases involving appeal waivers). Although the government asserts that due to his broad appeal waiver, any claim raised by Montanez on direct appeal will be waived, the merits of Montanez's proposed appeal claims are not at issue at this stage. Rather, the only issue is whether, as Montanez alleges, he requested that counsel file an appeal and counsel refused to do so. *Gomez-Diaz*, 433 F.3d at 791 792 (where counsel fails to file a direct appeal on behalf of a defendant who specifically requests it, and the defendant establishes a reasonable probability that but for counsel's deficient conduct, the defendant would have timely appealed, that defendant may be entitled to an out of time appeal "regardless of whether he can identify any arguably meritorious grounds for appeal that would fit one of the exceptions contained in his appeal waiver"); *see also Thompson v. United States*, 504 F.3d 1203, 1206-08 (11th Cir. 2007)(even where a defendant has not specifically instructed his attorney to file an appeal, the court must determine whether counsel adequately consulted with the defendant

about an appeal, whether counsel had an affirmative duty to consult, and whether the defendant was prejudiced by counsel's failure to consult and/or file).[2]

Moreover, the government concedes that Montanez's claim cannot be "conclusively" rejected based on the face of "the motion and the files and records of the case" alone. 28 U.S.C. § 2255; *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)("[a] federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts which, if proven, would entitle him to relief"). Therefore, a limited evidentiary hearing wherein Montanez's counsel, Howard Jay Manchel, shall be called to testify is required in order to resolve Montanez's claim of ineffective assistance of counsel on appeal. To that end, although Montanez has clearly waived the attorney client privilege with regard to

---

[2] Adequate consultation includes advising the defendant about the advantages and disadvantages of appeal, and the fact that counsel is obligated to file an appeal if the defendant wants to appeal, regardless of counsel's recommendation. *Thompson*, 504 F.3d at 1206-07. Counsel has a constitutional duty to consult with the defendant about an appeal when any rational defendant would want to appeal, or when the defendant reasonably demonstrated an interest in appealing. *Id.* at 1207; *see also Otero v. United States*, 499 F.3d 1267, 1269-70 (11th Cir. 2007)(criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal; rather, counsel has a constitutionally imposed duty to consult when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel an interest in appealing). In order to establish the defendant was prejudiced by counsel's failure to file an appeal, the defendant must show only that "'there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed,'" without regard to the merits of the appeal. *Thompson*, 504 F.3d at 1207 08 (*quoting Roe v. Flores Ortega*, 528 U.S. 470, 484 (2000)).

his ineffective assistance of counsel claim, the government requests that in any order that might be issued to schedule a hearing, the Court clarify that Mr. Manchel may testify to client communications implicated by Montanez's motion, and may also discuss those matters with the government beforehand in preparation for his testimony. Such an order would serve the interests of efficiency and judicial economy, as it would result in a speedier and more informative examination of counsel at the hearing.

2. **MONTANEZ'S CLAIM THAT HIS GUILTY PLEA WAS INVOLUNTARY BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL AND GOVERNMENT COERCION IS AFFIRMATIVELY CONTRADICTED BY THE RECORD, AND THUS IS WITHOUT MERIT.**

Montanez asserts that his guilty plea was involuntary based on ineffective assistance of counsel because his counsel promised him that: (1) the government would be required to file a Rule 35 motion after sentencing; (2) his girlfriend's automobile would not be forfeited; and (3) he would be deported to Mexico; but, none of these alleged promises were fulfilled. (Doc. 855 at 4). Montanez further asserts that he was coerced by the government into pleading guilty because the government threatened to prosecute Montanez's girlfriend if he did not plead guilty. (*Id.* at 5).

Although Montanez's plea agreement contained a waiver of appeal and collateral attack, his claim that his guilty plea was involuntary based on ineffective assistance is not precluded by the waiver, and thus, is properly before the Court. *See Patel v. United States*, 252 F. App'x 970, 974-75 (11th Cir. 2007) (defendant's ineffective assistance claim that explicitly challenges the validity of his guilty plea

is not barred by the appeal waiver)(*citing United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002)(ineffective assistance claim is not barred by appeal waiver when the claimed ineffective assistance directly affected the validity of that waiver or the plea itself)). However, the claim is affirmatively contradicted by the record. Montanez's claim that his guilty plea was involuntary based on alleged government coercion may be procedurally barred,[3] but it is also affirmatively contradicted by the record. Thus, both claims are without merit, and should be denied.

---

[3] Generally, a defendant must advance an available challenge to a conviction or sentence on direct appeal, or else a court must consider the challenge procedurally barred in a § 2255 proceeding. *See United States v. Frady*, 456 U.S. 152, 165-69, 102 S. Ct. 1584, 1593-95 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)(same); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989)(same); *see also Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610 (1998)(a voluntary and intelligent guilty plea may not be collaterally attacked; and even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review). However, because Montanez claims that his counsel was ineffective for refusing to file a direct appeal (doc. 855 at 7), which is one of the factors to consider in determining if a claim is procedurally barred, this claim is better disposed of on the ground that it is affirmatively contradicted by the record. That is, because the claim is affirmatively contradicted by the record, there is no need for the Court to first determine if counsel was ineffective on appeal, in order to resolve this claim. *See Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir. 1998)(to overcome the procedural bar a defendant must establish cause for not raising the claims on appeal, and that actual prejudice resulted); *Reece v. United States*, 119 F.3d 1462, 1468 (11th Cir. 1997)("Cause" for not raising an issue on direct appeal can be established by showing that counsel's performance failed to meet the *Strickland* standard for effective assistance of counsel).

### A. Standard for Establishing Ineffective Assistance

In order to prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove by a preponderance of the evidence both incompetence and prejudice, i.e., that "(1). . . counsel's representation fell below an objective standard of reasonableness [incompetence], and (2). . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different [prejudice]." *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc); *see also Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2068. "'Counsel's competence . . . is presumed and the [defendant] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms[.]" *Chandler*, 218 F.3d at 1315, n.15 (alterations and emphasis in original)(noting that the "presumption of competence must be disproved by a petitioner"). "Never does the government acquire the burden to show competence, even when some evidence to the contrary might be offered by the petitioner." *Id.* The standard for evaluating counsel's performance is "'reasonableness under prevailing professional norms.'" *Chandler*, 218 F.3d at 1313. To prove ineffectiveness, a defendant must show that his attorney's representation "fell outside the wide range of professionally competent assistance." *Id.* at 1314 (internal quotation marks omitted). "This standard of effectiveness applies equally to both the guilt and the sentencing phases of the trial." *Mills v. Singletary*, 63 F.3d 999, 1020 (11th Cir. 1995); *Strickland*, 466 U.S. at 686-87, 104 S. Ct. at 2064. However, "there is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069; *Chandler*, 218 F.3d at 1312.

When evaluating an attorney's performance, the Court must be highly deferential. *Chandler*, 218 F.3d at 1314. The Court "must avoid second-guessing counsel's performance." *Id.* Instead, the Court must "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Id.* (internal quotation marks omitted)(alteration in original). Thus, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (*quoting Darden v. Wainwright*, 477 U.S. 168 (1986)). "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315. Moreover, when reviewing counsel's performance, the Court "must evaluate the reasonableness of counsel's performance from counsel's perspective at the time," not with the distortion of hindsight. *Id.* at 1316. "The reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315.

In the context of guilty pleas, where a defendant has accepted a plea offer as opposed to proceeding to trial, *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366 (1985) clarified *Strickland*'*s* "prejudice" requirement by holding that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Hill*, 474 U.S. at 59. Where alleged ineffective assistance results in the rejection or lapse of a plea offer, the defendant

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, – U.S. –, 132 S. Ct. 1376, 1385 (2012)(rejection of plea offer); *Missouri v. Frye*, – U.S. , 132 S. Ct. 1399, 1409 (2012)(failure to convey and lapse of plea offer); *see also Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995)(where defendant rejected plea offer based on alleged ineffective assistance, in order to establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial")(alteration in original).

## B. Analysis

It is well settled that "[t]he plea colloquy, provided in Rule 11 of the Federal Rules of Criminal Procedure, constitutes the constitutional minimum requirements for a knowing and voluntary plea for federal courts . . . ." *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991)(*abrogated on other grounds by United States v. Garey*, 540 F.3d 1253, 1264-66 (11th Cir. 2008));[4] *United States v. Arteaga-Tapia*,

---

[4] *Garey* held that a valid waiver of counsel may occur when a cooperative defendant affirmatively invokes his right to self-representation, and also when an uncooperative defendant rejects the only counsel to which he is constitutionally entitled, abrogating *Stano v. Dugger*, which held that the express, affirmative

454 F. App'x 884, 886 (11th Cir. 2012). There is a strong presumption that, (1) a plea created by proceedings pursuant to Federal Rule of Criminal Procedure 11 is knowing and voluntary; and (2) statements made during the Rule 11 plea colloquy are true. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800, n.8 (11th Cir. 1987); *see also United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)("when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false").

> For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629 (1977). A court must reasonably rely on the plea colloquy and the signed plea agreement for the proposition that a defendant understood the agreement. *Gonzalez-Mercado*, 808 F.2d at 800, n.10.

In the present case, Montanez agreed that he would let the Court know if he did not understand any of the Court's questions, and he stated under oath to the Court that he understood he was required to answer truthfully. (Doc. 872 at 4, 15). Montanez stated under oath to the Court that he had not been coerced in any way

---

request for self-representation was the exclusive means by which a defendant may waive the right to counsel. *Garey*, 540 F.3d at 1264-66.

into pleading guilty, nor been made any promises not contained in the written plea agreement:

> Court: Is this the only agreement you have entered into with the government?
>
> Montanez: This is the only one.
>
> Court: Has anybody made a promise to you other than what is in the plea agreement that has induced you to enter this plea of guilty?
>
> Montanez: No, sir.
>
> Court: Has anybody made a promise to you of what your actual sentence will be?
>
> Montanez: No, sir.
>
> Court: Other than the plea agreement, has anybody threatened or forced you to enter this plea of guilty or told you that if you did not plead guilty further charges would be brought against you or other adverse action would be taken against you?
>
> Montanez: No, sir.

(Doc. 872 at 14-15). Montanez likewise stated under oath to the Court that he understood that he would likely be deported at the end of his sentence. (*Id.* at 22). Further, Montanez stated under oath to the Court that the government's description of the terms of his plea agreement — which included that (1) Montanez had the potential for a future Rule 35 reduction, but understood that the determination rested solely with the government and the government was not promising a future

reduction, and (2) Montanez was forfeiting his rights to the 2011 Kia Sorento — was accurate. (*Id.* at 12-14).

Notwithstanding his statements made under oath to the Court, Montanez now makes contrary allegations in his present motion, stating that the government coerced him into pleading guilty by threatening to prosecute his girlfriend, and that his counsel in fact promised Montanez that (1) the government would be required to file a Rule 35 motion after sentencing; (2) his girlfriend's automobile would not be forfeited; and, (3) he would be deported to Mexico. (Doc. 855 at 4). However, where Montanez's allegations in his motion are contrary to the oral statements he made under oath to the Court, comparatively, those allegations are entitled to little weight. *See Bryan v. United States*, 492 F.2d 775, 779-780 (5th Cir. 1974)[5](where defendant tendered only his own affidavit in support of his allegations, and the affidavit directly contradicted his statements made at his guilty plea hearing, the district court properly denied relief); *see also Oliver v. United States*, 292 F. App'x 886, 888, n.2 (11th Cir. 2008)(defendant's statement made in his affidavit under the penalty of perjury is entitled to more weight than defendant's contrary statement made in his § 2255 motion); *Patel*, 252 F. App'x at 975 (plea voluntary where defendant's allegations are in direct conflict with his statements during his plea colloquy, and he produced no evidence to challenge the veracity of his sworn testimony).  Montanez has failed to meet the appropriately heavy burden required to establish that his statements made under oath to the Court at his plea colloquy,

---

[5] Decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

including that: (1) he was not coerced; (2) he was not promised anything not contained in his written plea agreement; (3) he understood that he would be deported at the end of his sentence, not immediately; and, (4) he understood that the Kia Sorento would be forfeited, were false. *See Rogers*, 848 F.2d at 168 ("when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false"); *see also United States v. Deal*, 678 F.2d 1062, 1066 (11th Cir. 1982)("In the absence of physical harm, mental coercion overbearing the will of the defendant, or intentional misrepresentation or deception, the Court has not been very receptive to claims of coerced guilty pleas"); *Patel*, 252 F. App'x at 975 (plea voluntary where record demonstrates that defendant did not mention counsel's alleged promise of a specific sentence during his plea colloquy, and instead confirmed no one had promised him anything in exchange for his plea).

Alternatively, to the extent Montanez may be claiming that, despite knowing the minimum and maximum penalties he faced, and despite the fact that, as shown by the record, he was not "promised" any particular sentence, he was nonetheless somehow unaware of the consequences of his plea because the sentence Montanez received was harsher than the sentence his counsel predicted he could receive depending on the outcome of the § 5K1.1 motion,[6] Montanez's reliance on

---

[6] In a separate claim challenging counsel's effectiveness on appeal, Montanez states that his counsel "told him that the probable sentence (because of the assistance departure) would be 60 months." (Doc. 855 at 7); *see also Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)("[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed").

counsel's prediction of a lesser sentence also does not render his guilty plea involuntary, or counsel ineffective. *See Ruiz v. United States*, 494 F.2d 1, 3 (5th Cir. 1974)(Rule 11 requires disclosure of the punishment authorized by statute; however, it is only necessary that the defendant know the range of possible sentences, not the exact sentence the court will assess); *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800, n.10 (11th Cir. 1987)("Certainly, we realize that a defendant would ask his attorney how he believed the judge was likely to rule. [However,][a] defendant's unexpressed reliance on his attorney's speculation cannot overcome his direct responses" to the court); *Little v. Allsbrook*, 731 F.2d 238, 241 (4th Cir. 1984)("[a]n attorney's 'bad guess' as to sentencing does not justify the withdrawal of a guilty plea and is no reason to invalidate a plea" based on ineffective assistance of counsel)(*citing Wellnitz v. Page*, 420 F.2d 935, 936-37 (10th Cir. 1970)("an erroneous sentence estimate by defense counsel does not render a plea involuntary. And a defendant's erroneous expectation, based on his attorney's erroneous estimate, likewise does not render a plea involuntary"); *United States v. Deal*, 678 F.2d 1062, 1066 (11th Cir. 1982)(*citing McMann v. Richardson*, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448 (1970)(the court stated, "a plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession")); *United States v. Munguia Ramirez*, 267 F. App'x 894, 898 (11th Cir. 2008)(the record demonstrates that defendant's guilty plea and appeal waiver were valid, and does not support defendant's "claim that his guilty plea or appeal waiver was unknowing or involuntary due to his counsel's estimate of the ultimate sentence or any other outside factors").

Moreover, Montanez has not adequately alleged or shown prejudice, *i.e.*, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (because petitioner failed to allege the kind of "prejudice" necessary under *Strickland*, the district court did not err by declining to hold an evidentiary hearing on the petitioner's ineffective assistance claim); *see also Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000)(the defendant has the burden of affirmatively proving prejudice). Montanez states only that he would not have pleaded guilty "without proper written assurances of the government's promised consideration." (Doc. 855 at 4). This self-serving statement is insufficient to establish prejudice – especially where Montanez has not and cannot show that the government would have given the alleged additional "proper written assurances of the government's promised consideration." (*Id.*). The plea agreement entered into in this case between the government and Montanez contained all of the promises the government was willing to make. *See United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985)(*abrogated on other grounds by Padilla v. Kentucky*, 130 S. Ct. 1473 (2010))(bare allegation that defendant would not have pleaded guilty but for her counsel's alleged ineffectiveness is not sufficient to establish prejudice under *Strickland*); *see also Roccisano v. Menifee*, 293 F.3d 51, 61 (2d Cir. 2002)(no prejudice where defendant presented no evidence that the government offered him any plea bargain at all, much less one that would have given him a sentence below 235 months); *United States v. Alvarez*, 29 F. App'x 497, 498-99 (10th Cir. 2002) (denying COA on claim of involuntary plea based on ineffective assistance where, inter alia, "there is absolutely no evidence in the record indicating that the United

States was willing to enter into a conditional plea agreement preserving Alvarez's right to challenge the district court's denial of his suppression motion").

Furthermore, Montanez received a significantly lower sentence by pleading guilty and cooperating than he would have received if he had been convicted at trial. As shown, the record affirmatively contradicts Montanez's claims that his counsel promised him that: (1) the government would be required to file a Rule 35 motion after sentencing; (2) his girlfriend's automobile would not be forfeited; and, (3) he would be deported to Mexico immediately; or, that he was otherwise coerced by the government into pleading guilty. Thus, Montanez's claim that his guilty plea was involuntary based on ineffective assistance of counsel and alleged government coercion fails.

3. **THE RECORD ESTABLISHES THAT MONTANEZ'S WAIVER OF APPEAL WAS KNOWING AND VOLUNTARY; THUS, MONTANEZ'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING IS WAIVED.**

As discussed at length above, Montanez's claim that his guilty plea was involuntary based on ineffective assistance of counsel and/or alleged government coercion is affirmatively contradicted by the record and without merit. *See Supra* Section 2. Montanez's remaining claim that his counsel was ineffective at sentencing for failing to challenge the drug quantity and seek a safety-valve reduction, which does not relate to the voluntariness of Montanez's plea or waiver, is waived based on Montanez's valid and enforceable appeal waiver. (Doc. 855 at 8).

In general, a knowing and voluntary waiver of appeal or collateral attack rights is enforceable. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993);

*United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997); *United States v. Bascomb*, 451 F.3d 1292, 1294 97 (11th Cir. 2006); *Williams v. United States*, 396 F.3d 1340, 1341-42 (11th Cir. 2005). "A waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues — indeed, it includes a waiver of the right to appeal blatant error." *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999); *Bascomb*, 451 F.3d at 1295; *see also Williams*, 396 F.3d at 1341-42 ("a valid sentence appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing"). "Knowingly and voluntarily entered plea agreements containing appeal waivers are like contracts in which the government and the defendant have bargained for a deal." *Bascomb*, 451 F.3d at 1296. "[A]s long as an appeal waiver is voluntarily and knowingly entered into as part of a valid plea agreement, and that agreement is accepted by the court, the waiver is enforceable." *Id.* at 1297.

In order to uphold a waiver of appeal or collateral attack, the government need only demonstrate that "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver . . . or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Bushert*, 997 F.2d at 1351; *Williams*, 396 F.3d at 1341 42. In the present case, the record plainly establishes that the Court specifically questioned Montanez about the waiver of appeal and collateral attack during his plea hearing, and Montanez knowingly and voluntarily waived his right to appeal:

Court:   Also, you would have the right to appeal your sentence, but for this plea agreement you are waiving certain appeal rights, which means that you'll be bound by the Court's decision. Do you understand that?

Montanez:   Yes, sir.

Court:   There are some exceptions, but generally you are going to be bound by the Court's decision. Also, you are waiving your right to collaterally attack your sentence in any post conviction proceeding such as a habeas corpus. Do you understand that?

Montanez:   Yes, sir.

(Doc. 872 at 21-22); *see Munguia Ramirez*, 267 F. App'x at 898 (appeal waiver was knowing and voluntary where plea colloquy and plea agreement each clearly indicated that defendant had discussed the appeal waiver with counsel, court explained the waiver to him, and defendant stated that he understood it). Thus, the waiver is enforceable, and no exception to the waiver allows review of Montanez's claim — the government did not file an appeal, nor was there any upward departure or variance. (Doc. 739-1 at 18-19). Indeed, Montanez received two downward variances and a substantial assistance downward departure that together reduced his Guidelines calculation by six levels. (Doc. 873). Consequently, his claim is waived.

4. **STATEMENT AS TO EVIDENTIARY HEARING.**

As discussed above, a limited evidentiary hearing is required to resolve Montanez's claim of ineffective assistance of counsel on appeal. *See Supra*

Section 1.  However, the record is sufficient for the Court to make a determination as to Montanez's remaining claims without a hearing.[7]  *See Supra* Sections 2-3.

It is well settled in this circuit that the district court is not required to hold an evidentiary hearing every time a § 2255 claim is raised.  A federal habeas corpus petitioner is entitled to an evidentiary hearing only where the petitioner alleges facts that, if proven, would entitle him to relief.  *Futch v. Dugger*, 874 F. 2d 1483, 1485 (11th Cir. 1989).  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record."  *Holmes v. United States*, 876 F. 2d 1545, 1553 (11th Cir. 1989)(quoting *United States v. Guerra*, 588 F. 2d 519, 520-21 (5th Cir. 1979)).  After reviewing the record, it is within a court's sound discretion as to whether to conduct an evidentiary hearing.  *United States v. Lagrone*, 727 F. 2d 1037, 1038 (11th Cir. 1984).

---

[7] In the event that after holding a limited evidentiary hearing on Montanez's claim of ineffective assistance of counsel on appeal, this Court finds that Montanez is entitled to an out of time appeal, the Court may dismiss Montanez's remaining claims without prejudice, or hold them in abeyance pending the resolution of Montanez's direct appeal.  *See McIver v. United States*, 307 F.3d 1327, 1332, n.2 (11th Cir. 2002)(when a § 2255 claim seeking an out of time appeal is granted "[w]e think the best approach is to dismiss without prejudice or hold in abeyance the resolution of remaining collateral claims pending the direct appeal"). However, if Montanez's claim of ineffective assistance of counsel on appeal is denied, his remaining claims should be denied as set forth herein without a hearing.

Montanez's claims that: (1) his guilty plea was involuntary based on ineffective assistance of counsel and government coercion; and, (2) his counsel was ineffective at sentencing, do not require the introduction of facts from outside the record. The files and records of the district court are sufficient to dispose of those claims without a hearing, and thus, a hearing addressing those claims is not necessary.

## CONCLUSION

For the foregoing reasons, Montanez's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence should be denied.

Respectfully submitted,

SALLY QUILLIAN YATES
*United States Attorney*

/s/ Lisa W. Tarvin
*Assistant United States Attorney*
Georgia Bar No. 574960
Lisa.Tarvin@usdoj.gov

Theresa M. Bass
*Paralegal Specialist*

*600 U.S. Courthouse   75 Spring Street SW   Atlanta, GA 30303*
*(404) 581-6000   fax (404) 581-6181*

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that this document was prepared using Times New Roman 14 point font, and that I have caused a copy of the foregoing RESPONSE TO 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE to be electronically filed with the Clerk of Court using the CM/ECF system, and to be delivered to the following non-CM/ECF participant by depositing a copy in the United States mail in an envelope bearing sufficient postage for delivery:

Adrian Martinez Montanez
Reg. # 22993-171
FCI Coleman
P.O. Box 1031
Coleman, FL 33521

This 25th day of July, 2014.

/s/ Lisa W. Tarvin
*Assistant United States Attorney*